[Civ. No. 597.    Third Appellate District.—February 9, 1910.]

OTTO SCHWARTZ, and EMMA SCHWARTZ, LILLIE SCHWARTZ, WALTER SCHWARTZ, and ABBOTT SCHWARTZ, Minors, by OTTO SCHWARTZ, Their Guardian, Respondents, v. ROYAL NEIGHBORS OF AMERICA, a Corporation, Appellant.

LIFE INSURANCE—BENEFIT CERTIFICATE—TRUTHFUL STATEMENT TO AGENT—CHANGE OF ANSWER BY AGENT.—Where, upon an application for a benefit certificate of life insurance made before an authorized agent of a mutual benefit life insurance society, truthful answers were given by the applicant, but the agent deeming an affirmative answer immaterial to a specified question under the facts stated, made the answer an inaccurate negative to suit the ideas of the agent, in an action upon the policy by the heirs of the deceased beneficiary, the facts may be shown to overcome a defense of untruthful statement in the answer written by the agent.

ID.—REPRESENTATION AS TO MISCARRIAGE NOT VITIATING POLICY.— Where the applicant truthfully stated to the agent that she had had one miscarriage, from the effects of which she recovered in three or four days, and the agent assured her that was not such a miscarriage as was meant by the application, and that she should answer it no, such answer so made by the agent and not by the applicant could not vitiate the benefit certificate.

ID.—QUESTION AS TO PREGNANCY—NEGATIVE ANSWER—IMPOSSIBLE KNOWLEDGE—SUBSEQUENT DEVELOPMENTS—POLICY NOT AVOIDED.— Where, in answer to a question as to her pregnancy, she stated truthfully according to her knowledge that she was not in the family way, and it was proved that it would be impossible for her to know when the certificate was issued that she was pregnant, the fact that subsequent developments showed that probably pregnancy had then commenced, there being no intent to deceive, the answer made could not avoid the policy.

ID.—ACTION BY HEIRS OF BENEFICIARY—BURDEN OF PROOF UPON INSURER—SUPPORT OF FINDINGS.—In an action by the heirs of the deceased beneficiary to recover upon the certificate, the burden of proof is upon the insurer to prove his defense of deceit vitiating the certificate. It is held there that the evidence does not sustain such burden, and that the findings for the plaintiffs are sufficiently supported.

ID.—BY-LAWS FORBIDDING WAIVER—ACCEPTANCE OF ANSWER.—Notwithstanding the by-laws of the company forbid any waiver thereof by an agent or officer of the company, yet where the question does not relate to such waiver, but merely as to the acceptance of

an answer by the agent as satisfactory, where a truthful answer was orally given, and after explanation, it was the agent and not the applicant who gave a meaning to the answer, and wrote down what was not strictly true, the company is bound by his action in writing such answer.

ID.—ACCEPTANCE OF WRITTEN ANSWER BY INSURED—CONSTRUCTION MADE BY AGENT.—If the insured accepted the answer written by the agent as her answer, it may be safely assumed that she did so in acceptance of the construction put upon the matter by the agent.

ID.—RIGHTS OF INSURED AS TO ANSWER TREATED AS IMMATERIAL.—If the insurer or his agent drafts an answer to a question, in respect of which he treats the answer as immaterial, and does not observe strict accuracy as to the facts, the insured might well suppose he would be thought captious and hypercritical if he should insist upon answers exactly correct, when the party seeking the information and who alone is interested in it, was satisfied with statements less accurate, and which with full knowledge of the facts he had written out to suit himself.

ID.—EVIDENCE—IRRELEVANT STATEMENT SIGNED BY SUPREME PHYSICIANS.—*Held*, that evidence of a statement signed by supreme physicians of the benefit society setting forth rules to be observed by themselves in passing upon an application showing a miscarriage, addressed merely to whom it may concern, was irrelevant where not shown to have been known to the agent who received the application, or to the applicant, or to the plaintiffs.

ID.—RULINGS UPON EVIDENCE NOT PREJUDICIAL.—*Held*, that there were no rulings upon evidence which were prejudicial to the appellant.

ID.—REGULARITY OF DEPOSITIONS—ADMISSIBILITY.—If there was irregularity in the depositions of witnesses showing what took place at the time of the application for the benefit certificate, rendering them inadmissible, defendant should have so shown. They may be "irregular" and still admissible. Error must be made to appear affirmatively in the admission of evidence.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Benjamin D. Smith, and F. E. Cook, for Appellant.

S. L. Strother, and J. R. Webb, for Respondents.

CHIPMAN, P. J.—This is an action to recover upon a benefit certificate, issued by defendant on the life of Cecilia Schwartz. Plaintiff had judgment, from which and from the order denying its motion for a new trial defendant appeals.

The benefit certificate was admitted in evidence, is dated Peoria, Illinois, May 9, 1906, and was delivered to Mrs. Schwartz, May 21, 1906; also copy of her application dated February 15, 1906, and proof of death which occurred August 15, 1906. It was admitted that the signatures to the several documents are true and correct and that all assessments and dues required to be paid under the policy have been paid.

The court found all the allegations of the complaint to be true and all of the defendant's first affirmative defense to be true "except as hereinafter found." This defense is based upon the provisions set forth in the benefit certificate and the conditions thereto affixed and particularly averring that the insured warranted the answers made by her in her application to be "full, complete and literally true." Certain specified questions and answers are then set forth as to which it is averred that the answers were false and untrue, "by reason whereof the said benefit certificate herein sued on became, was and is null and void," to wit: "18. Have you, within the last seven years, consulted any person, physician or physicians in regard to personal ailment? *No.* If so, give dates, ailment, length of illness, and person, physician, or physicians' name and address. *Only confinement.*" The court found this defense to be untrue. "19. Have you ever undergone a surgical operation?" To which she answered, "No." This averment is found untrue. "331. Are you pregnant? . . . If applicant is pregnant, application will not be accepted by Supreme Physician. Examination should be postponed until at least two months after confinement." She answered "No"; and the answer alleges that at that time, to wit, February 23, 1906, she was pregnant. This averment is found untrue. "33n. How many miscarriages, and give dates of each?" To which she answered "None"; it is claimed that prior thereto she had had a miscarriage. As to this the court found that Mrs. Schwartz "made true and

correct answer to said question to Mrs. Lulu Case, deputy Supreme Oracle of defendant, and one of the officers of defendant, and was by said deputy Supreme Oracle informed that the miscarriage suffered by said applicant was not such a miscarriage as was contemplated by said question by de-defendant, and that her answer should be 'None'; that, acting on said advice and information, and believing therefrom that her said answer was literally true as meant by the question asked, said Cecilia Schwartz answered the same in the negative."

A second affirmative defense is based upon the answer given to question 331, and it is particularly averred that if Mrs. Schwartz was not pregnant on February 23, 1906, as warranted by her, the "said condition of non-pregnancy, so certified to and warranted by her said answer, did not continue as so warranted to the completion of the contract applied for in said application; but alleges that on and prior to the 23d day of May, 1906, the said Cecilia Schwartz became and was pregnant and that she failed and neglected to notify the defendant with relation thereto," whereby the said certificate became void. As to this the court found "that said applicant was not pregnant at the time of the delivery to and acceptance by her of defendant's benefit certificate." The findings are challenged as unsupported by the evidence.

It appears that Mrs. Schwartz was born in Germany and did not understand the English language very well and when being questioned by Mrs. Case, on several occasions, required the questions to be repeated and seemed "not to understand very well." Her application was solicited at her own home by Mrs. Lulu Case who recommended the application and witnessed it as "D. S. O., Camp Recorder, Deputy Supreme Oracle or Camp Physician." The form of application required the camp physician "to fill in" the answers to questions made part of the application. The answers now claimed to be false were made to and written in the application by Mrs. Case, acting in her official capacity. This examination was had on February 15, 1906, and the applicant was required to verify the answers before a physician. In the record is a verification, dated February 23, 1906, signed by Mrs. Schwartz and by Charles H. Ingrim, M. D. In this verification she affirms the truth of her state-

ments made in her answers; agrees that they shall form the
basis of her contract with the company and makes them
part of her benefit certificate; agrees that if they are "not
literally true," the "benefit certificate shall be void"; agrees
that any certificate issued to her "while in sound health,
shall be in pursuance of the by-laws of the society"; also,
that the benefit certificate and the application "shall be con-
strued as one entire contract." Dr. Ingrim, who signed this
verification with Mrs. Schwartz, did not testify, and it does
not appear that he asked her any questions.

There was but little testimony and, as it bears more or less
upon all the answers to questions claimed to be untrue, it
may here be given. Dr. McMurtry was called by defendant
and testified that he was the attending family physician of de-
ceased; that he was called to attend her in November, 1905,
and treated her then for a miscarriage and that "she was
up in three or four days." He was again called to treat
her about August 10, 1906, and she died August 15. He
testified that "the direct cause of her death was her kidney
condition." She was then pregnant. "The foetus was about
half born. I did not measure the foetus, and it is impossi-
ble to say how long she was pregnant. I stated once it was
about three months, but I think it was in the neighborhood
of four months. I did not measure the foetus and could
not say positively." On cross-examination he testified: "If
it should appear in evidence that Mrs. Schwartz was sick in
her monthly period the latter part of April, I should then
say that the foetus was about three months old. . . . If it
should be a fact that in the latter part of April she was
sick, it would be impossible for her to know, definitely, her
true condition by the 21st of May." (This was the date she
received her benefit certificate.) He testified that she died
of convulsions and "the miscarriage was caused by that also."
It appeared from the testimony of Mrs. Schwartz' husband
that she "had her last monthly sickness at the end of April
the same year she died."

The depositions of Mary Teichman and Rosa Teichman
were received in evidence. These witnesses were next door
neighbors of Mrs. Schwartz and were present when the deputy
supreme oracle and camp physician of the society examined
Mrs. Schwartz and took her application. Mary Teichman

testified: "At that time I and Rosa Teichman were there, and Rosa's mother, who could not talk English, and also Mrs. Case and Miss Bond, representing the company. Mrs. Case wrote the answers to the questions in the application, and I heard everything she asked and the answers given. I heard Mrs. Case ask Mrs. Schwartz whether she had ever been sick or not, and what kind of sickness she had; how many times she was sick, and she said only once and she said she miscarried and got an operation. Mrs. Case says she don't have to tell doctor about it." On cross-examination she testified: "I do not speak English very well. When the people are talking I do not understand everything they say when they speak in English. You know Mrs. Schwartz she (Mrs. Case) asked her lots of times questions and she could not understand them very well. She asked her lots of times what mean that. Mrs. Schwartz was German and I am German. Mrs. Case spoke to Mrs. Schwartz in English. Sometimes Mrs. Schwartz did not understand what she said. Then Mrs. Case would speak over. Mrs. Case asked Mrs. Schwartz if she was in a family way or not. She never was in family way at that time when Mrs. Case was there. All I know about it was what Mrs. Schwartz said. Mrs. Case told her she had to go to see doctor for it before she could get her final papers. I was in the room all the time Mrs. Case was there. Mrs. Case had a paper and wrote these things down. When she asked Mrs. Schwartz a question and Mrs. Schwartz answered it, Mrs. Case would write it down." Rosa Teichman testified substantially as did Mary Teichman. She testified: "Mrs. Schwartz at that time was not pregnant. She said, 'I ain't in a family way,' and that was all she said about it. She said she was not so very sick on this former occasion when she had the miscarriage, but that she had a doctor, and an operation at that time. I asked Mrs. Case if she should tell Dr. Ingrim about the miscarriage, and she said, 'No, you don't have to tell him.' Mrs. Case was there; she had a fountain pen and asked the questions and wrote down the answers. Mrs. Schwartz did not always understand the question when it was first asked her. . . . Mrs. Schwartz did not know how old her grandpa and grandmamma was, and she asked my mamma about it in German and then told Mrs. Case in English. I spoke to

Mrs. Schwartz in English. My people came from the same part of Germany that Mrs. Schwartz' people did.'' This closed the testimony.

1. As to the answer given by Mrs. Schwartz to question 331, that she was not then pregnant and as to the point that she became pregnant before the benefit certificate was delivered to her, the evidence fully warranted the findings of the court. The first symptom of probable pregnancy occurred the last of April, 1906, and Dr. McMurtry testified that ''it would be impossible for her to know, definitely, her true condition by the 21st of May,'' when she received the certificate.

Questions 18, 19 and 33n all relate to a single instance of previous sickness, pregnancy and operation. The evidence is that Mrs. Schwartz made no concealment of the fact that in 1905 she had a miscarriage and an operation, which seems not to have been of any seriousness, for Dr. McMurtry testified that he treated her and ''she was up and about in three or four days.'' She did not make any concealment of the fact from Mrs. Case but told her the truth, and, after explanations, Mrs. Case, not Mrs. Schwartz, wrote down the answers. There is no evidence that Mrs. Schwartz knew what answers were being recorded against her, except the presumption that might follow from having signed the paper. We cannot, from anything disclosed, impute to her any intention to deceive or that she was knowingly a party to any guilty deception. She was asked no questions, so far as appears, by Dr. Ingrim, the society's medical officer. Mrs. Case was the authorized agent of the society and appears to have enjoyed the rather high-sounding title of ''Deputy Supreme Oracle and Camp Physician,'' and with her was Miss Bond, an officer of the society. Neither of these persons was called by defendant to explain their conduct or part in the taking of the application. Nor was Dr. Ingrim called to show what occurred when Mrs. Schwartz came to him. We cannot presume that either one of these officers was purposely committing a fraud upon the society which they represented, or was intentionally seeking to mislead it or Mrs. Schwartz. The reasonable, as well as the more charitable, view of the transaction, is, that both Mrs. Case and Miss Bond, after hearing the facts about the single previous

sickness of any kind which is in question, concluded that it was of little consequence and on their own initiative and through no wish of the applicant, made out the application. Mrs. Schwartz took this application to Dr. Ingrim bearing the recommendation of Lulu Case, who had conducted the examination, and we may well assume that he accepted it without further inquiry, believing that "the deputy Supreme Oracle and Camp Physician" had sufficiently examined Mrs. Schwartz. Mrs. Schwartz was told that she need not speak of the miscarriage to Dr. Ingrim, but whether she did or not we do not know. Presumably she made no verbal misrepresentations to him or defendant would have shown it by Dr. Ingrim. The burden was on defendant to establish its defense which we think it failed to do. The findings of the court are supported by the evidence.

3. There was admitted in evidence a document signed by Susan McG. Snyder and three others, "Supreme Physicians, Royal Neighbors of America," setting forth certain rules to be observed by themselves in passing upon the application of a person "who has had a miscarriage." It does not appear to be a by-law of the society, nor does it appear that "Camp Physician" Case or Mrs. Schwartz knew of its existence. It is addressed—"To whom it may concern," but we cannot see that it concerns any one of the plaintiffs or has any relevancy to the case.

4. There was also admitted in evidence a section of the by-laws of the society which provides that no officer of the society, or local camp officer "is authorized or permitted to waive any of the provisions of the laws of this society which relate to the contract for the payment of benefits between any member and the society." It is contended that the insured warranted her answers to be literally true, and neither Mrs. Case nor any other officer had the authority to waive truthful answers to the questions in her application. The question here seems to us not one of waiver so much as it is the acceptance of the answers as satisfactory by the society's agent. The answer as orally given was literally true, for Mrs. Schwartz said she had a miscarriage and, after explanation, it was the agent and not Mrs. Schwartz who gave a meaning to the sickness and wrote down what was not strictly true. It was the society's agent and not the insured who

did this, and if the insured accepted it as her answer we may safely assume that she did so in acceptance of the construction put upon the matter by the agent. In *North American Ins. Co.* v. *Throop*, 22 Mich. 146, [7 Am. Rep. 638, 646], Mr. Justice Cooley said: "If the insurer himself, or his agent, drafts an answer to such interrogatory, in which he treats it as immaterial and does not observe strict accuracy in his statement of facts, the assured might well suppose he could be thought captious and hypercritical if he should insist upon answers exactly correct, when the party seeking the information, and who, alone, was interested in it, was satisfied with statements less accurate, and which, with full knowledge of the facts, he had written out to suit himself."

The assured here was a German woman with an imperfect understanding of the English language. Approached by an officer whose title implies one second in authority to the "Supreme Oracle," accompanied by Miss Bond, also an officer of the society, it was natural for her to be guided by these representatives of the society and place confidence in them. If there was a violation of the society's rules or failure of duty it was not on the part of the assured, and her beneficiaries should not suffer through the zeal or shortcomings of the society's agents. It may be observed that the representation related to a matter which in no wise affected the then present physical condition of the applicant.

5. Error is claimed in sustaining plaintiff's objection to a question put to Dr. McMurtry by defendant: "Doctor, you have said that when Mrs. Schwartz consulted you some several weeks prior to her death, you knew she was pregnant; state whether she had told you before?" The witness had testified that Mrs. Schwartz went to see him "about two weeks before she was taken sick; that about a week before she had spoken to him about being pregnant." The witness had already testified to the fact sought to be elicited. Conceding that the question was proper the ruling was harmless.

6. The witness was permitted, over defendant's objection, to answer the question—"Did you think the first miscarriage had anything to do with the last one?" and answered— "I do not." We think the question was immaterial inas-

much as the warranties ran to the answers given in the application. But we do not think the ruling prejudicial.

7. When the depositions of Mary and Rosa Teichman were offered, defendant objected. The record states: "It was admitted that the depositions were irregularly taken and counsel for defendant objected to same . . . on the ground that same and such evidence is incompetent, irrelevant and immaterial; that under the by-laws of defendant no agent has any right to waive the rules of defendant and that defendant is not bound by the acts of any agent in attempting to waive the rules." If there was such irregularity in the taking of the depositions as to have made them inadmissible, defendant should have so shown. They may have been "irregular" and still admissible. Error must be made to appear. We think it was admissible to show what took place at the time the application was made.

The case is not entirely free from difficulty, but regarding the acts of the parties as free from intentional wrong, though not strictly in conformity with the rules of the society, we feel constrained to uphold the view taken by the learned trial judge.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.