UNITED AMERICAN LIFE INSURANCE COMPANY, Plaintiff,

v.

Peggy J. REBARCHEK, and Zara Rebarchek, as Administrator of the Estate of Johnny C. Rebarchek, Deceased, Defendants.

Civ. A. No. 4552.

United States District Court
D. Colorado.

Sept. 28, 1955.

Stanley T. Wallbank, and Henry S. Sherman, Denver, Colo., for plaintiff.

Frank P. Lynch, Jr., Denver, Colo., for defendant Peggy J. Rebarchek.

Harry F. Anderson, Kiowa, Colo., for defendant administrator.

KNOUS, Chief Judge.

This action arises out of a policy of life insurance, numbered 21745, issued December 28, 1952, by the plaintiff to the deceased, Johnny C. Rebarchek, husband of the defendant, who was therein named beneficiary. The insured died July 28, 1953, with the cause of death listed upon the Standard Certificate of Death as "Gun Shot Self Inflicted Right Temple." After a demand by claimant for the full amount of the policy, $10,-000, and by the Administrator for the first premium, which was later disclaimed, plaintiff brought this suit in interpleader joining as party defendants the above-named claimants. Following sundry dispositions and orders of the Court not here pertinent, the plaintiff on October 20, 1954, filed its motion for summary judgment alleging in substance that only the first premium paid by the deceased was in issue, upon the basis that the policy was issued on the latter's material misrepresentations, and also that the deceased had caused his own death, both alleged facts being in derogation of the company's liability for the full amount of the policy.

At the hearing held thereon March 11, 1955, the Court indicated a view adverse to the plaintiff's motion in respect to the issue of suicide, but ordered briefs on the issue of the alleged material misrepresentation by the deceased upon which the motion for summary judgment now stands.

The policy contains, as pertinent hereto, clauses providing for two-year contestability, that the policy and application therefor constitute the entire contract and that statements by the insured shall be deemed representations rather than warranties in the absence of fraud, that the agent shall have no authority to bind the company by any statement or promise, that statements and arguments contained in the application along with premiums are consideration for the policy, and an agreement appearing above the deceased's signature in the application that the answers made therein are complete and true.

The application for the policy was in the handwriting of the agent for the company, and as the answer to question number nine therein, "Do you use alcoholic beverages in any form? (If so, state kind, amount and frequency)," appears the word "No." Plaintiff alleges that from the deposition of the defendant it conclusively appears that such answer was a false and fraudulent representation which voids the policy.

■■ It is a cardinal principle requiring no citation of authority that one who moves for summary judgment has the burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to the existence of such an issue is resolved against the movant. While the defendant did not see fit to favor the Court with opposing affidavits, the latter rule is that if a genuine is-

sue of fact otherwise appears, failure to file opposing affidavits is not fatal. Barron and Holtzoff, Federal Practice and Procedure, Rules ed., vol. 3, § 1235; Griffith v. William Penn Broadcasting Co., D.C.Pa., 1945, 4 F.R.D. 475; United States v. Newbury Mfg. Co., D.C. Mass., 1941, 1 F.R.D. 718.

■■ It is the general rule that answers given to questions with reference to the applicant's use of intoxicating beverages and his habits pertaining to the use thereof are material to the risk. 29 A.J. § 581, p. 472. The early case of Germania Life Ins. Co. v. Klein, 1913, 25 Colo.App. 326, 137 P. 73, 75, established the well recognized rule in Colorado that "if representations made in answer to specific questions material to the risk are untrue, the policy will thereby be rendered void, and that it is immaterial whether such answers be considered warranties or representations, or whether they were made with intention to deceive the insurer or without such intention." North American Life Ins. Co. of Chicago v. Korrey, 1945, 113 Colo. 359, 157 P.2d 149; Capital Life Ins. Co. v. Thurnau, Colo.1954, 275 P.2d 940.

The sole question then, presented for determination here is whether the presentations of plaintiff meets the burden of establishing the nonexistence of a genuine material fact issue on the question of the alleged misrepresentations by the insured.

On page 52 of the deposition of defendant appears the following:

"Q. And will you tell us specifically with reference to item 9 there, which asks, 'Do you use alcoholic beverages in any form?' was that question asked of your husband, if you recall? A. Yes. She asked him that question.

"Q. And what did he say, if anything? A. And Johnny said, 'Sure, I take a drink now and then, moderately.' And Mr. Seeley [the agent] was sitting over there, and he laughed and he said, 'Sure, put down "No," because we all do, once in a while.' "

Plaintiff does not deny this statement was made, but rather in an attempt to escape its consequences cites authority which the Court does not think controlling.

Concerning this subject the following is said in 81 A.L.R. 849:

"Another situation is that in which an agent or medical examiner, in the course of preparing an application, suggests an answer to a question therein, either by giving his construction of the question or by direct advice as to whether or not a particular fact should be stated. This situation is unique in the respect that the insured knows that the facts are not stated in the application as he originally stated them to the agent or examiner; authorities applicable in the one situation might not be deemed applicable in the other [citing Mutual Life Ins. Co. v. Lambert, D.C.W.D.Mo.1929, 34 F.2d 215, contra]. Such distinction, however, is not generally recognized. On the other hand, however, practically all courts appear to have considered the two sets of circumstances as fundamentally the same, in that both have, as a prime characteristic, the ignorance of the insured that the answers are not properly recorded. Therefore, in this class of cases, by the great weight of authority, the insurer is held responsible for the insertion of the false answers, on the theory that the agent acts for the insurer in preparing the application."

Many authorities are cited thereafter, among them being National Mutual Fire Ins. Co. v. Duncan, 1908, 44 Colo. 472, 98 P. 634, 20 L.R.A.,N.S., 340. Supplementary annotations supporting the rule are found in 117 A.L.R. 794, and 148 A.L.R. 511. The reason for the rule was quoted by the California court in Schwartz v. Royal Neighbors of America, 1910, 12 Cal.App. 595, 108 P.

51, 54, from an opinion by Justice Cooley in North American Fire Ins. Co. v. Throop, 22 Mich. 146, 7 Am.Rep. 638 at page 646, as being:

> " 'If the insurer himself, or his agent, drafts an answer to such interrogatory, in which he treats it as immaterial and does not observe strict accuracy in his statement of facts, the assured might well suppose he could be thought captious and hypercritical if he should insist upon answers exactly correct, when the party seeking the information, and who, alone, was interested in it, was satisfied with statements less accurate, and which, with full knowledge of the facts, he had written out to suit himself.' "

See also 4 Couch on Ins., § 842, pages 2775, 2776.

Counsel for plaintiff rely on 1953 C.R. S. 72–1–25 in support of the motion and cite the following words as the pertinent provisions thereof:

> " * * * But no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

■ The case of New York Life Ins. Co. v. Fukushima, 1923, 74 Colo. 236, 220 P. 994, not only disposes of the question in consideration adversely to the contention of plaintiff, but also supports the rule hereinabove cited as stated in 81 A.L.R. 849. The Court therein quoted the following from Northwestern Mut. Life Ins. Co. v. Farnsworth, 1915, 60 Colo. 324, 153 P. 699, and held the rule not to be abrogated by the Colorado statute relied upon by plaintiff [74 Colo. 236, 220 P. 995]:

> "The solicitor and medical examiner of an insurance company are its agents, their acts and knowledge are those of their principal, and the insured cannot be held responsible for a wrong perpetrated through their fraud or negligence. False statements in an application or examination known to them, at the time made, to be false, are no defense. The facts may be established by parol evidence."

In the Fukushima case the findings of the trial court disclosed that the examiner "was advised of an operation on insured", but that he informed the insured this operation " 'didn't make any difference' " and that the answers as written by him would so show. This similarity in the factual situation makes the decision in the Fukushima case particularly pertinent here.

Counsel for plaintiff seek to distinguish the case in that there truthful answers were given whereas in the present case there were not, and also the illiteracy of the insured is emphasized as a distinction. But in North American Life Ins. Co. of Chicago v. Korrey, supra, the Court interpreted the Fukushima case in reference to "illiteracy" as being only an answer to the contention that the insured should have examined the policy while it was in his possession. That situation has no bearing here in that the rule herein involved is based on the proposition that the insured knows that facts as related to him are not stated in the policy—therein lying the uniqueness of the rule.

Before leaving the Fukushima case, it should be noted that since misinterpretation, negligence, or fraud on the part of the agent in such circumstances fall without the statutory prohibition, by the same reasoning such also fall without the policy limitations on "statements and promises" of the agent. Moreover, this case falls within the language of a Pennsylvania decision wherein it was said that the policy provision stating the agent could not bind the company by making or receiving any representation or information "falls far short of protecting the principal from the negligence or fraud of the agent in preparing the application." Suravitz v. Pru-

**558**

dential Ins. Co., 1914, 244 Pa. 582, 91 A. 495, 497, L.R.A.1915A, 273.

All of the above authorities presuppose good faith and full disclosure on the part of the insured. The plaintiff claims that even if the answer of an "occasional drink" was made, it was a misrepresentation in itself, and point to defendant's deposition in support thereof. By affidavit the company iterates that had facts been known as disclosed in the deposition, the policy would not have been issued. But this means nothing in that the rule is that such fact is not left for the determination of the insurer after the death of the insured. Volunteer State Life Ins. Co. v. Richardson, 1922, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270.

█ An examination of the deposition leads one inevitably to the conclusion that the deceased was drinking somewhat heavily on the date of .death. But this is not fatal to the claimant in that it is the rule that truthfulness or falsity in answer to questions concerning the use of liquor is determined at the date of application. Zurich General Accident & Liability Ins. Co., Ltd., of Zurich, Switzerland v. Flickinger, 4 Cir., 1929, 33 F.2d 853, 68 A.L.R. 161. The statement was also made that the deceased's drinking habits had not changed since the time of his marriage to the claimant. But when defendants' entire testimony on this subject is read it may be questioned whether deponent took deceased's last day as the standard of comparison of his previous practice with respect to drinking.

Without further prolonging an opinion which perhaps is already unduly lengthy with recitals of the testimony surrounding the deceased's drinking habits, suffice it to say that deponent in instances made positive assertions that would lead one to the conclusion that deceased in fact was an "occasional" drinker, and other assertions upon which the plaintiff relies which were in the main predicated on answers of "I don't know" or guesswork, which would indicate deceased's drinking habits were more than "occasional."

█ In short, there is a genuine issue of fact as to deceased's good faith and honesty in answer to question number 9 of the application as stated to the agent, as there is a genuine question of fact as will undoubtedly appear at the trial of the issue as to whether the statement was made as alleged. The plaintiff has not carried its burden of showing no material issue of fact. Therefore, it is

Ordered and adjudged that plaintiff's motion for summary judgment be, and the same is, hereby denied.