John CADEZ, Jr.; and James Cadez, a partnership, doing business as Central Distributing Company, Appellants,

v.

GENERAL CASUALTY COMPANY OF AMERICA, and General Insurance Company of America, Appellees.

No. 6722.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1961.

Rehearing Denied Dec. 12, 1961.

Certiorari Denied April 23, 1962.

See 82 S.Ct. 950.

George S. Graham, Grand Junction, Colo. (Coit & Graham, and Albin Anderson, Grand Junction, Colo., on the brief), for appellants.

Charles W. Johnson, Denver, Colo. (Ronald V. Yegge, Denver, Colo., on the brief), for appellees.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This appeal challenges a judgment entered on a verdict directed in favor of the appellee insurance companies (General) in a tort action claiming that General negligently failed to provide the appellants-plaintiffs (insureds) with workmen's compensation protection. Jurisdiction is based on diversity.

As the case was withdrawn from the jury, we view the evidence and the reasonable inferences therefrom in the manner most favorable to the insureds. In 1949 Cadez, Sr., the father of the insureds, and a partner named Rader acquired a wholesale distributing business at Grand Junction, Colorado. One Coe, whose testimony was not available at the trial because of his death, was a

friend of Cadez, Sr., and an agent representing several insurance companies, some of which wrote compensation insurance. Cadez, Sr., told Coe that he wanted insurance "that would cover everything" in connection with the distributing business. At that time Cadez, Sr., and his partner did not have a sufficient number of employees to subject them to the Colorado workmen's compensation law.[1] Coe, a local or soliciting agent for General without authority to bind it or to write policies, obtained from General a "blanket liability policy" which specifically excluded coverage of "any obligation for which the insured may be held liable under any Workmen's Compensation Law." The policy was for 3 years and was renewed in 1952 and 1955.

Cadez, Sr., bought out his partner in 1951 and in 1953 sold the business to his two sons, the insureds. In 1958, during the life of the 1955 renewal policy and at a time when there were more than 4 people employed in the business, an employee named Hugenot was injured and filed a claim with the Colorado Industrial Commission for workmen's compensation under the state law. The insureds notified General which denied liability on the basis of the policy exclusionary clause. The insureds were required to pay a compensation award to Hugenot plus certain expenses and seek to recover from General the $21,646.25 so paid.

Shortly after the issuance of the first policy in 1949 and thereafter during all the times involved herein, except the fourth quarter of 1955 and the first quarter of 1957, the business had 4 or more employees. On at least one occasion Cadez, Sr., told Coe the business had more than 4 employees and inquired about his protection. Coe replied that he had full coverage. There is no evidence that Cadez, Sr., or the insureds, ever expressly requested insurance against workmen's

compensation liability or that Coe ever told either Cadez, Sr., or the insureds that the policy as issued specifically covered workmen's compensation liability. No evidence was introduced as to any statements or representations by any one in connection with the issuance of the 1955 renewal policy.

From the evidence the jury could have found that Coe made wrongful representations as to the insurance coverage or erroneously interpreted that coverage. The question is whether such finding would have justified a recovery in tort against General.

The question of the liability of an insurance company for negligent representations of an agent in an interpretation of a policy was considered in Union Life Insurance Co. v. Burk, 10 Cir., 169 F.2d 235, 239. We held that such representations "would not bind the company unless they were made within the scope of his authority, or, if not warranted by the scope of his authority, they nevertheless came to the notice of the company, and by its subsequent conduct it estopped itself to repudiate them." Although this principle was announced in a case arising in New Mexico, our attention is directed to no Colorado statute or decision which negates the applicability of the rule in Colorado.

The parties differ as to the meaning and applicability of the Colorado statute[2] providing that no statement made to or by an agent and not contained in an application shall be taken as having been brought to the knowledge of the company or as charging it with any liability by reason thereof. In a number of cases Colorado has construed this statute as no preventive to recovery from an insurance company when there was a misstatement of facts in an insurance application in such circumstances that the agent had knowledge of the misstatement.[3] In oth-

1. The Colorado law, Colo.Rev.Stat.Ann. § 81-2-6 (1953), applies to an employer of 4 or more.

2. Colo.Rev.Stat.Ann. § 72-1-25 (1953).

3. Constitution Life Ins. Co. v. Rogerson, 130 Colo. 26, 273 P.2d 1019, 1022; New York Life Ins. Co. v. Haru Fukushima, 74 Colo. 236, 220 P. 994; Northwestern Mut. Life Ins. Co. v. Farnsworth, 60

er cases it has been applied to prevent recovery.[4] Regardless of whether the statute is concerned only with actions sounding in contract or applies also to tort actions and whether the statute concerns only statements either made in or omitted from insurance applications, we see nothing therein or in the Colorado decisions which detracts from the applicability of the rule which we stated in the Union Life case. That decision lays down two tests, viz.: (1) was the statement made within the scope of the agent's authority, and (2) if not made within the scope of that authority, did the statement come to the knowledge of the company and result in company action which precluded the company from repudiating the statement.

██ As to the first, we have no doubt that negligent representations as to policy coverage when made by a general agent or by a policy-writing agent are binding upon the agent's principal. But this case does not present such a situation. The agency agreement of General authorized Coe "to receive and accept proposals" for contracts of insurance. Coe, a soliciting or local agent, had no power to bind General on any risk or to write a policy of insurance.[5] The policy was written in Denver and then forwarded to Coe for delivery to the insureds. If Coe's statements are considered as an erroneous interpretation of the insurance contract rather than a wrongful representation, the result is the same as we have said that the interpretation of contracts of insurance is not within the scope of authority of an agent such as Coe.[6]

██ As to the second, there is no claim that the statements of Coe ever came to the attention of General. It may be that some insurance agents in their enthusiasm to produce business make reckless or negligent statements concerning policy coverage. The complexity of modern insurance contracts is such that persons desiring protection understandably place great reliance on the agent who handles their insurance business. If untrained or over-zealous agents make negligent or reckless representations as to policy coverage and it can be shown that the company had actual knowledge thereof or that knowledge may be implied from the circumstances of a particular situation, the company must accept the responsibility. Such is not the case here. There is no evidence that General had actual knowledge of Coe's statements and no evidence from which knowledge may be implied.

The insureds point out that representatives of General audited the insureds' books to determine premium amounts and that such audits disclosed the existence of more than 4 employees. This might have been pertinent had there been any notice to General that the insureds desired or thought they were getting protection against workmen's compensation liability but the record shows no such notice.

Reliance is also placed on the payment of a $15 claim on account of an injury to an employee named Provo in 1957. It is without persuasive effect as the evidence is that the payment was for medical expense within the medical payment coverage and that no compensation claim was asserted by Provo.

Affirmed.

Colo. 324, 153 P. 699. See also United American Life Insurance Company v. Rebarchek, D.C.Colo., 134 F.Supp. 554, 557.

4. Benson v. Bankers Life and Casualty Co., Colo., 362 P.2d 1039 (misstatement by agent as to requirements of company for disclosure of prior illnesses); Warner v. Farmers' Automobile Inter-Insurance Exchange, 104 Colo. 359, 90 P.2d 965 (attempted waiver of forfeiture clause by

agent); and Commonwealth Casualty Ins. Co. v. Kuhrt, 75 Colo. 175, 225 P. 251 (authority of agent to bind company as to effective date of insurance).

5. Cf. Smith v. Orion Insurance Company, 10 Cir., 298 F.2d 528, decided November 3, 1961.

6. United Pacific Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185 F.2d 443, 447–448.