**LIFE INVESTORS INSURANCE COMPANY OF AMERICA,
Plaintiff–Appellant,**

v.

**Bruce SMITH, Acting Commissioner of Insurance, and Division of Insurance for the State of Colorado, Defendants–Appellees.**

**No. 91CA0213.**

Colorado Court of Appeals,
Division IV.

May 21, 1992.

Rehearing Denied June 25, 1992.

Sherman & Howard, Craig R. Maginness, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Howard, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge DUBOFSKY.

Life Investors Insurance Company of America (Life Investors) appeals a district court judgment affirming an adverse decision by the Division of Insurance for the State of Colorado (Insurance Division) in regard to Life Investors misrepresenting the availability of health insurance coverage. We affirm.

In the summer of 1982, Charles Cozza went to work for a construction company. After he began employment, the construction company discontinued its group health insurance coverage for employees. At the request of the employer, John Yannacito, an insurance selling agent (selling agent), spoke to the company's employees, including Cozza, about the availability of individual health insurance.

The selling agent discussed with Cozza the possibility of obtaining medical/hospitalization insurance for Cozza and his wife, who was then approximately six months pregnant. After some initial discussions, the selling agent contacted Life Investors' general agent in Colorado, Jerry Campbell (general agent), in regard to insuring the Cozzas. The selling agent informed the general agent that Mrs. Cozza was six months pregnant.

The general agent in turn called Life Investors' home office and spoke with an employee about obtaining health insurance for the Cozzas. The company employee was not informed concerning the existing pregnancy. However, the general agent then advised the selling agent that health insurance was available for the Cozzas despite the wife's pregnancy and, as a consequence, the selling agent told the Cozzas that such coverage was available.

Although the selling agent initially told Cozza that the health insurance would not be effective until the policy was approved by Life Investors, he subsequently informed the Cozzas that their expected twin babies would be covered by the policy in the event the children had significant post-delivery problems.

The selling agent provided Cozza with an application for a combination life and health insurance policy with Life Investors. On September 28, 1982, the application was completed by the Cozzas and returned together with the first month's premium to the selling agent, who in turn gave it to the general agent, who forwarded it to Life Investors. It was received by Life Investors on October 4, 1982, and coverage was denied by the company on October 7, 1982.

On October 17, 1982, Mrs. Cozza prematurely delivered twin boys. On October 18, 1982, the selling agent was notified by Life Investors that it had denied the Cozzas coverage. The selling agent notified Cozza about the denial of coverage on October 20, 1982.

The Cozzas filed a complaint with the Insurance Division concerning Life Investors' denial of health coverage. On December 12, 1986, the Insurance Division initi-

ated administrative proceedings against Life Investors by issuing a Notice of Hearing and Charges. The notice set up two counts against Life Investors for alleged violations of the Colorado Insurance Code. Count I asserted that "that through its agent, Yannacito, respondent [Life Investors] misrepresented the benefits, advantages, conditions, or terms of its health policy coverage in violation of § 10–3–1104(1)(a)(I), C.R.S. [ (1987 Repl.Vol. 4A) ]." Count II asserted that the alleged violation in Count I was a "knowing violation" under § 10–3–1108(1)(a) and (b), C.R.S. (1987 Repl.Vol. 4A).

At the conclusion of the administrative proceedings, the Insurance Commissioner (Commissioner) issued a final agency order finding in favor of the Insurance Division and against Life Investors on both counts and imposed a $5,000 fine as a sanction for the violations.

Life Investors sought judicial review of that ruling, and the district court affirmed. This appeal followed.

### I.

Life Investors argues that the Commissioner erroneously determined that the selling agent was Life Investor's agent when he was actually the Cozzas' agent. Life Investors claims that because the selling agent was Cozzas' agent, it cannot be held responsible for his misstatements. We disagree with this contention.

■ An administrative agency decision is presumptively valid. *People v. Gallegos,* 692 P.2d 1074 (Colo.1984); *St. Luke's Hospital v. Colorado Civil Rights Commission,* 702 P.2d 758 (Colo.App.1985).

■ The standard of review for a court reviewing agency actions on appeal is whether substantial evidence exists on the record to support the findings and conclusions of the agency. *Lassner v. Civil Service Commission,* 177 Colo. 257, 493 P.2d 1087 (1972). And, in order for a reviewing court to set aside a decision by an administrative agency, the court must find that there is no competent evidence in the record as a whole which supports the agen-

cy's determination. *Noe v. Dolan,* 197 Colo. 32, 589 P.2d 483 (1979).

■ Here, in an initial administrative hearing, the administrative law judge (ALJ) found that the insurance agent was a "soliciting agent" who acted on Life Investors' behalf in the transaction with the Cozzas. The ALJ's finding in this regard was adopted by the Commissioner in the final agency order.

The evidence indicates that the selling agent had previously sold group health insurance to Charles Cozza's new employer, and it was at the employer's request, not Cozza's, that he spoke with the employees. On this evidence, the ALJ could properly conclude that the selling agent was holding himself out, prior to any direct contact or solicitation by Cozza, as a person who worked with certain insurance companies and could provide health/life insurance to these employees.

Section 10–2–202, C.R.S. (1987 Repl.Vol. 4A) provides:

(1) Insurance agent means a person appointed by an insurer to solicit applications for a policy of insurance or to negotiate a policy of insurance on its behalf....

Also § 10–2–203(1), C.R.S. (1987 Repl. Vol. 4A) provides:

Every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall be regarded as representing the insurer and not the insured or his beneficiary in any controversy between the insured or his beneficiary and the insurer.

Applying these statutory provisions to the circumstances at issue, we conclude there is ample record support for the Commissioner's finding that the selling agent was the agent of Life Investors.

In *Northwestern National Casualty Co. v. State,* 682 P.2d 486 (Colo.App.1983), this court considered whether an insurance agent who had acted as an insurance broker was the agent of the insured. Relying largely on the language in the employment policy which stated that the agent was

appointed by the insurance company and was authorized to represent the company in order to "solicit, sell and service policies on its behalf," we determined that the broker fell within the definition of insurance agent as set out in § 10–2–202(1) and § 10–2–203(1), and thus, he was determined to be an agent of the insurer.

Here, on August 23, 1982, the selling agent signed an employment contract with Life Investors which had almost identical language to that found in the employment contract in *Northwestern National Casualty Co. v. State, supra.* The duties of the selling agent as set out in the contract here include the responsibility to solicit, sell, and service policies offered by Life Investors. That employment contract was formally signed and accepted by Life Investors on October 1, 1982.

This contractual arrangement between the selling agent and Life Investors is another significant factor that supports the Insurance Commissioner's conclusion that the selling agent was an agent of the insurer. *See Northwestern National Casualty Co. v. State, supra. See also Northern National Life Insurance Co. v. Lacy J. Miller Machine Co.,* 311 N.C. 62, 316 S.E.2d 256 (1984).

### II.

Life Investors next argues that, if the insurance agent was acting as an agent for Life Investors, then his misrepresentations to the Cozzas concerning the availability of insurance misrepresented stated company policy and, thus, was outside the scope of his authority. Therefore, Life Investors contends that it cannot be held responsible or liable for such statements. Again, we disagree.

■■ Actual authority is considered that authority which is in fact given to an agent. In contrast, apparent authority is that authority which the agent appears to third parties to have. The acts or statements of an agent performed within the scope of his real or apparent authority are binding upon the principal, regardless of whether the principal has actual knowledge of the agent's act. *See Bowser v. Union*

*Bag Co.,* 112 Colo. 373, 149 P.2d 800 (1944); *Russell v. First American Mortgage Co.,* 39 Colo.App. 360, 565 P.2d 972 (1977).

■ The selling agent's contract with Life Investors, coupled with the authorizing statements made to him by the general agent, provided the basis of his express authority. Responsibilities under his contract included soliciting applications, collecting premiums, and delivering policies to applicants after they were issued by Life Investors. Certainly Life Investors expected the selling agent to discuss the health and life insurance coverages offered by it with prospective policy purchasers.

The Commissioner, with adequate record support, concluded that by clothing its selling agent with the express authority to solicit applications, which necessarily included the authority to represent the contents of the policies, Life Investors provided him with the authority to represent to the Cozzas that they could obtain health insurance on their soon-to-be-born children from Life Investors.

Life Investors relies on *Cadez v. General Casualty Co.,* 298 F.2d 535 (10th Cir.1961), *cert. denied,* 369 U.S. 861, 82 S.Ct. 950, 8 L.Ed.2d 18 (1962) and *Pete's Satire, Inc. v. Commercial Union Insurance Co.,* 698 P.2d 1388 (Colo.App.1985), *aff'd. sub nom. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239 (Colo.1987) to support its contention that the agent's misrepresentations cannot be attributed to it. However, in both *Cadez* and *Pete's Satire,* the insured had a copy of the insurance policy and the agent's oral representation contradicted the express terms of the policy. As a result, the courts there held that the insured was charged with knowledge of restrictions stated in the policy and that the misrepresentations of the agent under those circumstances would not be imputed to the insurance company.

To the contrary here, the Cozzas did not possess a policy which contradicted the representations of the selling agent at or before the time the children were born. Furthermore, the application that the Cozzas filled out did not provide contradictory in-

formation to that which they had learned through the selling and general agents.

Indeed, the application that the Cozzas filled out indicates that coverage is provided if the application is accompanied by the first required premium. Thus, since the Cozzas did not possess a policy which contradicted the agent's representations at or before the time their children were born, the agent's and application's representations are imputed to the insurer. *See Armstrong v. United Insurance Co.*, 98 Ill. App.3d 1132, 54 Ill.Dec. 313, 424 N.E.2d 1216 (1981); *Greenwood v. American Family Insurance Co.*, 398 N.W.2d 108 (N.D.1986).

### III.

■ Life Investors next argues that the selling agent's misrepresentations did not involve the "benefits, advantages, conditions, or terms" of the insurance policy and therefore did not fall within the prohibitions of § 10–3–1104(1)(a)(I), C.R.S. (1987 Repl.Vol. 4A). We disagree.

Here, the selling agent misrepresented to the Cozzas that they were eligible for a Life Investors' health insurance policy for their children and also misrepresented that a policy had been issued and that coverage existed. Furthermore, the selling agent made these representations after receiving similar representations from the general agent who had contacted an employee at the home office.

Life Investors primarily argues that, since no policy was actually issued, there could not be a misrepresentation as to the benefits, advantages, conditions, or terms of the policy. We disagree with Life Investors' argument that only if a misrepresentation results after the policy has been received by the insured is there a violation of § 10–3–1104(1)(a).

The plain wording of § 10–3–1104(1)(a)(I) demonstrates that it is applicable to situations, such as this one, in which the sales agent/general agent has made misrepresentations to a potential insured about the contents of a policy yet to be issued. Section 10–3–1104(1)(a) states that the prohibitions against misrepresentations of policy benefits, terms, and conditions include those made as a part of sales presentations.

Moreover, the decision by the Commissioner here represents an interpretation by him of § 10–3–1104(1)(a)(I). The interpretation of a relevant statute by the appropriate administrative agency is given significant weight by the courts in interpreting that same statute. *See Adams v. Department of Social Services*, 824 P.2d 83 (Colo. App.1991).

Furthermore, § 10–3–1107, C.R.S. (1987 Repl.Vol. 4A) implicitly provides the Commissioner with discretion in interpreting the proper application of § 10–3–1104(1)(a)(I). This section states:

> Whenever the Commissioner has reason to believe that any person has been engaged or is engaging in this state in any unfair method of competition or any unfair or deceptive act or practice, whether defined or *reasonably implied* in this part 11, and that a proceeding by him in respect thereto would be to the interest of the public, he shall proceed as provided in article 4 of title 24, C.R.S. (emphasis added)

■ On this basis, we therefore agree with the Commissioner that if, as here, a selling agent of an insurance company misstates the eligibility terms of a policy while also indicating the scope and types of coverage involved in that policy, there has been a misrepresentation of the terms, benefits, and conditions of the policy and, thus, a violation of § 10–3–1104(1)(a)(I).

■ Life Investors also claims that there was not a misrepresentation of the terms, benefits, and conditions of this policy by the agent and that, at most, there was only a misstatement as to eligibility for the policy. In our view, the selling agent's representation to the Cozzas that the expected twins were covered for complications of childbirth under the policy misrepresented the availability of benefits to the Cozzas and also misrepresented a condition for eligibility, *i.e.*, that a woman in her sixth month of pregnancy was eligible for coverage when, in reality, Life In-

vestors did not insure a woman after she reached the third month of pregnancy.

## IV.

Life Investors next argues that the finding of the Commissioner that Life Investors "knowingly" violated § 10–3–1104(1)(a)(I) is not supported by substantial evidence in the record and by law. We disagree.

Section 10–3–1108(1)(a), C.R.S. (1987 Repl.Vol. 4A) provides for payment of a penalty of $1,000 for each violation of § 10–3–1104, C.R.S. (1987 Repl.Vol. 4A) except when the insurer "knew or reasonably should have known that it was in violation," in which case the monetary penalty becomes $5,000 for each violation. Here, the Commissioner assessed a $5,000 fine.

Life Investors argues that this administrative decision was erroneous because it was largely based on its finding that the general agent knew that Mrs. Cozza was six months pregnant when the application was taken. Life Investors claims the evidence was insufficient in that regard. In our view the evidence clearly supports the conclusion that the general agent knew that Kim Cozza was six months pregnant and that the selling agent was advising the Cozzas that Life Investors offered a health insurance policy for which they were eligible.

The knowledge of a general agent is imputed to the insurer. *Wade v. Olinger Life Insurance Co.*, 192 Colo. 401, 560 P.2d 446 (Colo.1977). Therefore, Life Investors knowingly violated § 10–3–1104(1)(a)(I), and the penalty imposed by the Commissioner is correct.

The judgment of the district court affirming the order of the Commissioner is affirmed.

CRISWELL and MARQUEZ, JJ., concur.